## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

1:17-cv-09371
Judge Sharon Johnson Coleman
Magistrate Judge Sheila M. Finnegan

ABDUL MOHAMMED,

PLAINTIFF,

vs.

APPLE INC., a California Corporation,

DEFENDANT,

COMPLAINT WITH JURY DEMAND

 RECEIVED

DEC 29 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### COMPLAINT AT LAW

Abdul Mohammed ("Plaintiff"), individually, upon personal knowledge of facts pertaining to him and on information and belief, appearing Pro Se, brings this complaint against Apple Inc. ("Apple").

### NATURE OF THE ACTION

1. To induce consumers to purchase newer model iPhones, Apple purposefully throttled the processing speed of iPhone 5s, iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone SE, iPhone 7 and iPhone 7 Plus ("Affected iPhones"), intentionally making the phones unnecessarily slow at ordinary tasks like opening apps, updating apps, loading webpages, and responding to inputs like scrolling and swiping.

2. The slowness is tied, at least in part, to diminishing battery condition, which is a function of the iPhone's age and use, the quality of design and manufacturing, and external conditions such as temperature. As Apple is aware, consumers do not ordinarily associate diminishing battery condition with slower processing speeds. And iPhone users do not address the real issue by replacing the battery, a solution that Apple intentionally obscures and deters. Instead, they purchase the new model iPhone that seemingly runs a lot faster and smoother—that is, until the battery's condition triggers the software to throttle the phone again. Apple deprived Plaintiff of his Affected iPhone of the performance to which it is entitled.

1

3. Plaintiff brings this action on behalf himself, and alleges claims for Apple's violation of Illinois' and consumer protection laws and prohibitions on unfair and deceptive business practices, trespass to chattels, breach of the covenant of good faith and fair dealing, and its violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, to recover damages stemming from Apple's unlawful, unconscionable, and intentional sabotage of older model iPhones.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States. The Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff and Defendant are diverse parties. The Court also has personal jurisdiction over Defendant because Plaintiff's claims arise out of Defendant's contacts with the State of Illinois.

5. At all relevant times, Defendant conducted substantial business in the Northern District of Illinois. A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6. Plaintiff Abdul Mohammed is resident of the State of Illinois and resides in Naperville, Illinois. Plaintiff purchased an iPhone SE at an Apple Store in Naperville, Illinois in March 2016. Prior to purchasing his iPhone SE, Mohammed visited Apple's Store and discussed the phone with a representative from the Apple store. Ever since his phone was updated with iOS software version 10.2.1 in or around January 2017, his phone has exhibited significantly slower processing speeds, apps take longer to open and update, the phone responds slowly to inputs and lags, and the overall performance has deteriorated substantially.

7. Defendant Apple Inc. is a California corporation headquartered in Cupertino, California. Defendant sells its iPhones in its own retail stores located throughout the country, online, and also through third parties, such as AT&T, T-Mobile, Verizon etc. Defendant engineers and licenses to iPhone users iOS software, the only operating system Apple permits on its devices.

2

## FACTUAL BACKGROUND

8. Apple purposefully planted software designed to inhibit the performance of older model iPhones after new iPhone models were introduced as part of a strategy to induce its customers to purchase newer iPhones.

9. Apple's iPhone 6 and iPhone 6 Plus were released on September 19, 2014. At the time of launch, the iPhone 6 was available to those committing to a 2-year service contract for $199 (16GB variant), $299 (64GB variant), and $399 (128 GB variant), and was available off-contract for $649.92 (16GB variant), $749.91 (64GB variant), and $849.90 (128 GB variant). The iPhone 6 Plus was available to those committing to a 2-year service contact for $299 (16GB variant), $399 (64GB variant), and $499 (128 GB variant), and off-contract for $749.76 (16GB variant), $849.99 (64GB variant), and $949.99 (128 GB variant).

10. Apple's iPhone 6S and iPhone 6S Plus were released on September 25, 2015. At the time of launch, the iPhone 6S cost $649 (16GB variant), $749 (64GB variant), and $849 (128GB variant), and the iPhone 6S Plus cost $749 (16GB variant), $849 (64GB variant), and $949 (128 GB variant).

11. Apple's iPhone 7 and iPhone 7 Plus were released on September 16, 2016. At the time of launch, the iPhone 7 cost $649 (32GB variant), $749 (128GB variant), and $849 (256GB variant), and the iPhone 7 Plus cost $749 (32GB variant), $849 (128GB variant), and $949 (256GB variant).

12. iOS is the operating system installed on iPhones.

13. On January 23, 2017—four months after the launch of the iPhone 7 and iPhone 7 Plus—Apple released iOS version 10.2.1. Shortly thereafter, iPhone users were notified that an update to iOS was available. Apple represented as follows regarding the update:



**iOS 10.2.1**
Apple Inc.
72.1 MB

iOS 10.2.1 includes bug fixes and improves the security of your
iPhone or iPad.

For information on the security content of Apple software
updates, please visit this website:
https://support.apple.com/en-gb/HT201222

14. Unbeknownst to iPhone SE, iPhone 6, iPhone 6 Plus, iPhone 6S, and iPhone 6 Plus owners, Apple inserted code into the iOS version 10.2.1 that dramatically slowed down the processing performance of these phones by linking each phone's processing performance with its battery health. Absent the malicious code inserted by Apple, the reduced battery capacity of these phones would not have affected processing performance.

15. Apple's iPhone 8 and iPhone X were released on September 22, 2017, and November 3, 2017, respectively.

16. On December 2, 2017, iOS version 11.2.0 was released. Shortly thereafter, iPhone users were notified that an update to iOS was available. Apple represented as follows regarding the update:



**iOS 11.2**
Apple Inc.
430.7 MB

iOS 11.2 introduces Apple Pay Cash to send,
request and receive money from friends and
family with Apple Pay. This update also
includes bug fixes and improvements.

For information on the security content of
Apple software updates, please visit this
website:
https://support.apple.com/en-gb/HT201222

17. Unbeknownst to iPhone SE, iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone 7, and iPhone 7 Plus owners, Apple inserted code into the iOS version 11.2.0 that dramatically slowed down the processing performance of these phones by linking each phone's processing performance with its battery health.

4

18. John Poole, co-founder of Primate Labs, connected Affected iPhone's slow CPU performance to battery capacity in certain iOS software versions. Poole found that the performance deterioration arose when iOS software version 10.2.1 (or later) was installed in iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, and iPhone SE. Poole also found performance deterioration arose when iOS software version 11.2 (or later) was installed in iPhone 7 or iPhone 7 Plus.

19. Only after Poole's revelation did Apple admit that it had been developing and introducing code to its customers intended to throttle the processing speed of older versions of iPhones.

20. iPhones are powered by lithium-ion batteries. By nature, the capacity of lithium-ion batteries degrades over time.

21. The processing speed of iPhones should not normally diminish as a function of battery capacity. As Poole observes, "While we expect battery capacity to decrease as batteries age, we expect processor performance to stay the same." On account of Apple's intentional conduct, once the battery condition of Affected iPhones reaches a certain state, processing speeds slow dramatically.

22. Apple secretly and without authorization diminished the performance of Plaintiff's phone to induce him to buy newer models. This triggering of older model iPhones with a switch that slows processor speed to a crawl is but one of the many ways Apple achieves this end. Apple employs other means of accomplishing this end by delivering software updates that in other ways unjustifiably diminishes the performance of older model iPhones. This course of conduct is unfair, deceptive, in bad faith, and injures Plaintiff, and unjustly enriches Apple at their expense.

23. Plaintiff installed iOS 10.2.1 on his iPhone SE, and as a result, his iPhone's performance deteriorated substantially. Apps take unduly long to open, update, and respond to inputs such as swiping and scrolling lag. Websites crash and take too long to load. Plaintiff had not experienced such deterioration until installing the update. The performance of Plaintiff's iPhone SE has not improved with subsequent software installations. Plaintiff's iPhone SE now runs iOS 11.2.0, and it still performs in a deficient and deteriorated manner.

## CLAIMS

### COUNT I
### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

37. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

38. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, prohibits unfair methods of competition and unfair or deceptive acts or practices.

39. Apple's conduct, described above, in purposefully hampering the speed and performance of older iPhones, was unfair and deceptive. Apple unilaterally hampered performance of Plaintiff's iPhone without warning, notice, or the ability to opt out.

40. When Apple provided the software update with the inhibitory software, it omitted this material fact from Plaintiff.

41. Apple's omission was material and deceptive. Reasonable consumers consider the processor speed of their iPhones to be a material aspect of their decision whether to buy a smartphone.

42. Apple's conduct was also unfair. Apple's conduct was immoral, unethical, oppressive, and unscrupulous, and substantially injured Plaintiff.

43. Plaintiff suffered damage as a result of Apple's deceptive and unfair conduct. His iPhone's processing speed has been significantly reduced, apps and programs perform poorly. Plaintiff have been deprived of the benefit of his bargain and is left with substandard iPhone that perform worse than they should.

### COUNT II
### TRESPASS TO CHATTELS

44. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

45. Apple's conduct described above, in purposefully hampering the speed and performance of older iPhones, constitutes a trespass to chattels.

6

46. Apple purposefully installed software or a computer program intended to hamper the speed and performance of Plaintiff's Affected iPhone.

47. Apple's conduct in hampering the speed and performance of Affected iPhone was without consent or exceeded the consent given by Plaintiff.

48. Plaintiff suffered damage as a result of Apple's trespass. Plaintiff's Affected iPhone's processing speed has been significantly reduced, apps and programs perform poorly.

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

49. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

50. Plaintiff and Apple entered into contract.

51. Plaintiff has fully performed his obligations under the contract.

52. Under Illinois law a covenant of good faith and fair dealing is implied into every contract.

53. Apple breached the covenant of good faith and fair dealing by engaging in the above described conduct, purposefully hampering the speed and performance of Plaintiff's Affected iPhone.

54. Apple's conduct was willful and intentional and committed with a purpose of slowing down Plaintiff's Affected iPhone to induce Plaintiff to buy new iPhones. Apple's conduct was unfair, deceptive, and in bad faith. It gave iPhone users no notice and left them with no reasonable alternatives.

55. Plaintiff suffered damage as a result of Apple's breach of the covenant of good faith and fair dealing. Plaintiff's iPhone's processing speed has been significantly reduced, apps and programs perform poorly. Plaintiff have been deprived of the benefit of his bargain and is left with substandard iPhone that perform worse than it should.

7

## COUNT IV
## COMPUTER FRAUD AND ABUSE ACT

56. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

57. Apple's conduct described above, in purposefully hampering the speed and performance of Plaintiff's Affected iPhone, constitutes a violation of the Consumer Fraud and Abuse Act.

58. Apple's conduct described above constitutes the intentional transmission of a program, information, code, or command that damaged Plaintiff's Affected iPhone.

59. Plaintiff suffered damage or loss by reason of Apple's violation of the Act because of the impairment to the integrity and availability of data, program, systems, and information that resulted from Apple's conduct. As a result of Apple's intentional acts, his Affected iPhone's processing performance has been significantly reduced, and apps and other programs perform poorly. Plaintiff have been deprived of the benefit of his bargain and is left with substandard iPhone that perform worse than it should.

## COUNT V
## ILLINOIS COMPUTER CRIME PREVENTION LAW

60. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

61. Apple's conduct described above, in purposefully hampering the speed and performance of Palintiff's Affected iPhone, constitutes a violation of the Illinois Computer Crime Prevention Law, 720 Ill. Comp. Stat. 5/17-51 because Apple, without authorization, or in excess of the authorization granted by Plaintiff, inserted or attempted to insert a program into his computer or computer programs knowing or having reason to know that such program contains information or commands that will or may: (A) damage or destroy that computer; (B) alter, delete, or remove a computer program or data from that computer; or (C) cause loss to the users of that computer.

62. Plaintiff suffered loss by reason of Apple's above described conduct. His iPhone's processing speed has been significantly reduced, apps and programs perform poorly. Plaintiff have been deprived of the benefit of his bargain and is left with substandard iPhone that perform worse than it should.

## COUNT VI
## VIOLATION OF PROHIBITED ACTIVITIES - 18 U.S. Code § 1962

63. (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

64. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

9

65. The Defendant's unjust enrichment as mentioned in this complaint was also proceeds of crime and fraud from a pattern of racketeering activity which the Defendant committed upon the Plaintiff.

66. The Defendant received income derived, directly or indirectly, from a pattern of racketeering activity.

67. The Defendant used and invested, directly or indirectly, part of derived income, directly or indirectly, from a pattern of racketeering activity; in acquisition of interest and the establishment and operation of, enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

68. The Defendant used the proceeds of crime and fraud mentioned in this complaint from a pattern of racketeering; to acquire or maintain, directly or indirectly, interest in or control of an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

69. The Defendant associated itself with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly; in the conduct of such enterprise's affairs through a pattern of racketeering activity.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, individually, respectfully requests that the Court enter an Order:

a. Awarding Plaintiff actual, consequential, and incidental damages to be determined by the trier of fact;

c. Awarding Plaintiff punitive damages;

d. Awarding Plaintiff injunctive relief;

e. Awarding Plaintiff pre- and post-judgment interest on all amounts awarded;

f. Awarding attorney fees (If the Plaintiff retains an Attorney in future for this Lawsuit), litigation expenses, and costs of suit incurred through the trial and any appeals of this case; and

g. Awarding Plaintiff Judgement against the Defendant, in the alternative for treble damages, treble compensatory damages, treble punitive damages, and treble costs as per the provisions of 18 U.S. Code § 1962.

**h. Enter and Injunctive Order against the Defendant to cease manufacturing of all Apple Products overseas and bring back all the manufacturing units to United States so that the United States Government and other regulatory authorities can have jurisdiction to conduct inspection of its manufacturing units and its manufacturing practices in order to stop the Defendants from further defrauding of the Plaintiff and other consumers within the United States.**

i. Granting such other and further relief as the Court deems just and proper.

## CERTIFICATION

I, Abdul Mohammed, certify that to the best of my knowledge, the claims raised herein are not the subject of any other action pending in any court or any arbitration proceeding, and no such other action or arbitration is contemplated.

I certify that the foregoing statements made by me are true and accurate to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment for perjury.

Dated this 29th of December 2017.

_____

Abdul Mohammed, Pro Se Plaintiff

258 East Bailey Rd, Apt C,
Naperville, IL 60565